IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

ERIE INSURANCE PROPERTY
AND CASUALTY COMPANY,

          Petitioner,

v.                                          CIVIL ACTION NO.: 3:20-CV-77
                                                   (GROH)

PAUL J. DOLLY and
B.D.K.,

          Respondents.

**MEMORANDUM OPINION AND ORDER GRANTING
PETITIONER'S MOTION FOR SUMMARY JUDGMENT**

Now before the Court is Petitioner Erie Insurance Property & Casualty Company's Motion for Summary Judgment [ECF No. 14], filed on August 25, 2020. Therein, the Petitioner requests that the Court enter a declaratory judgment that the Petitioner has no duty to further defend or indemnify Respondent Paul Dolly with respect to the claims asserted by Respondent B.D.K in B.D.K. v. Dolly et al., No. 19-C-19 (W. Va. 21st Cir.). The matter is fully briefed and is now ripe for review. For the reasons stated herein, the Petitioner's motion for summary judgment is **GRANTED**.

          **I.**          **Factual and Procedural Background**

This action arises out of a lawsuit Plaintiff B.D.K. filed against Respondent Dolly in the Circuit Court of Mineral County, West Virginia, on April 22, 2019.[1] B.D.K. v. Dolly et

---

[1] Because both B.D.K. and Paul Dolly are respondents in the instant action, the Court will refer to B.D.K. as the "Plaintiff" and to Dolly as the "Respondent" for clarity.

al., No. 19-C-19 (W. Va. 21st Cir.); see ECF No. 14-1. In the underlying lawsuit's complaint, the Plaintiff sets forth six causes of action against the Respondent, for which she seeks compensatory and punitive damages.[2] ECF No. 14-1. Counts I though IV allege that the Respondent, a teacher employed by Mineral County Technical Center ("MCTC"), sexually assaulted her on four separate occasions while she worked as a student assistant for MCTC's administrative office. ECF No. 14-1 ¶¶ 28, 38, 50, 61. In the first three instances, the Respondent cornered her after she delivered his mail and prevented her from leaving his classroom before sexually assaulting her. Id. ¶¶ 27, 37, 48. In the fourth instance, the Respondent followed her into a classroom set up as a "mock hospital," where he cornered her before sexually assaulting her. Id. ¶¶ 59–61. Counts V and VI allege intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED"), respectively, as a result of these assaults. Id. at 6–7. The Plaintiff alleges that she remains traumatized to this day as a result of the sexual assaults and suffers psychological and emotional distress. Id. ¶¶ 32, 40, 52, 64, 71.

At the time of the alleged sexual assaults, the Respondent was insured under an Extracover HomeProtector Insurance Policy, Policy No. Q51-7400235 ("the Policy") provided by the Petitioner. See ECF No. 14-2. As relevant herein, the Policy provides coverage for "bodily injury caused by an occurrence during the policy period" ("bodily injury liability coverage"). ECF No. 14-2 at 22. The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to the same general harmful conditions." Id. at 10. The Policy also provides coverage for "personal injury caused by

---

[2] The complaint in the underlying lawsuit also asserted claims against Mr. Keith Lynn Detrick, a teacher at Mineral County Technical Center, and the Board of Education of the County of Mineral, West Virginia. However, the instant action only concerns the claims asserted against Respondent Dolly.

an offense committed during the policy period" ("personal injury liability coverage"). Id. at 22. "Personal injury," in pertinent part, is defined as "injury arising out of (1) libel, slander, or defamation of character; [and] (2) false arrest, wrongful detention or imprisonment . . . invasion of privacy, or humiliation caused by any of these." Id. at 4–5. The Policy contains an "intentional acts exclusion," which exempts coverage for bodily injury or personal injury "expected or intended by anyone . . . protect[ed]" [id. at 22] and does not cover "[p]unitive or exemplary damages and related defense costs" [id. at 24].

The Petitioner received notice of the lawsuit and agreed to defend the Respondent under a Reservation of Rights on March 12, 2020. ECF No. 14-3. On May 8, 2020, the Petitioner filed the instant action seeking a declaratory judgment that it has no duty to defend or indemnify the Respondent in the underlying lawsuit. On August 25, 2020, the Petitioner filed a Motion for Summary Judgement [ECF No. 14] and a Memorandum of Law in Support of its Motion for Summary Judgment [ECF No. 15], asserting that it is entitled to the declaratory judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Respondent filed a Response to Petitioner's Motion for Summary Judgment [ECF No. 16] on September 24, 2020.[3] The Petitioner filed a Reply [ECF No. 17] on October 6, 2020. Accordingly, the motion is ripe for consideration.

---

[3] The Plaintiff did not file a Response in Opposition to the motion. See LR Civ P 7.02(b)(1) ("Responses to motions for summary judgment shall be filed and served within twenty-one (21) days from the service of the motion."). Thus, the Court will only consider the Respondent's objections to the motion in determining whether the Petitioner is entitled to a judgment as a matter of law. See Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993) (stating that the failure of a party to respond to a summary judgment motion does not relieve the moving party of its burden under Rule 56(c) of the Federal Rules of Civil Procedure to show "that the uncontroverted facts entitle the party to judgment as a matter of law") (quotations omitted).

## II. Jurisdiction Under the Federal Declaratory Judgment Act

Here, the Petitioner seeks a declaratory judgment regarding the Policy's coverage as to the Plaintiff's claims against the Respondent. The Federal Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Act is interpreted as giving courts the "unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Severn Falls Co., 515 U.S. 277, 286 (1995). The Fourth Circuit has stated that it is appropriate for courts in this district to exercise its discretion "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (internal quotations omitted) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937)).

Here, the uncertainty, insecurity, and controversy in this matter revolves around the question of whether the Petitioner must defend and indemnify the Respondent in the underlying lawsuit. Thus, a declaratory judgment would serve a useful purpose in clarifying the legal relations in issue, and the Court's exercise of jurisdiction in this matter is proper. See United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 494 (4th Cir. 1998) (stating that it is "well established that a declaration of parties' rights under an insurance policy is an appropriate use" of the court's discretion because the "declaratory judgment action is designed to allay exactly the sort of uncertainty that flows from the threat that ambiguous contractual rights may be asserted"); Erie Ins. Prop. & Cas. Co., Inc. v.

Edmond, 785 F. Supp. 2d 561, 564 (S.D. W. Va. 2011) (exercising the court's jurisdiction in a similar case).

### III. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "material fact" is a one that could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Accordingly, a "genuine issue" concerning a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

The moving party bears the burden of proving that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law because "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof" at trial. Celotex, 477 U.S. at 322–23; see Fed. R. Civ. P. 56(a). Once the movant has met its burden to show an absence of genuine issues of material fact, the party opposing summary judgment must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256; see also Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967) (stating that summary judgment is proper if "the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.").

In considering a motion for summary judgment, a court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. Hoschar v. Appalachian Power Co., 739 F.3d 163, 169 (4th Cir. 2014) (quoting Glynn v. EDO Corp., 710 F.3d 209, 213) (4th Cir. 2013)). If a court finds that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case" after viewing all of the evidence on the record, then summary judgment is mandated under Rule 56(c). Celotex, 477 U.S. at 322.

Here, the issue presented deals solely with the interpretation of the insurance policy and coverage available. The West Virginia Supreme Court has stated that "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law."[4] Syl. pt. 1, Tennant v. Smallwood, 211 W. Va. 703, 704, 568 S.E.2d 10, 11 (2002). Accordingly, the Court finds that there are no disputes of the factual circumstances in this case and summary judgment is appropriate.

## IV. Discussion

The Petitioner argues that it is entitled to summary judgment, and an accompanying declaratory judgment, because the Policy does not provide coverage for the Plaintiff's claims against the Respondent. In support, the Petitioner asserts that (1) the sexual assaults were not an "occurrence" as defined by the Policy to trigger bodily injury coverage, (2) the intentional acts exclusion applies and likewise exempts coverage for the sexual assault claims, (3) the Plaintiff's claims do not fall under the Policy's definition of "personal injury" for personal liability coverage, and (4) coverage for the

---

[4] Pursuant to Erie R. Co. v. Tompkins, the applicable law in a diversity case such as this is determined by the substantive law of the forum state. 304 U.S. 64, 78 (1938). Thus, West Virginia substantive law governs the Court's interpretation and application of the Policy.

6

Plaintiff's claims for punitive damages are separately excluded by the plain language of the Policy.

In his response, the Respondent does not challenge the Petitioner's arguments. ECF No. 16. Instead, he argues that the Petitioner owes him a duty to indemnify and defend because coverage is available for an insured's negligent conduct, and the Plaintiff asserted an NIED claim against the Respondent. Id. at 4. The Respondent avers that an insurer's duty to defend is broader than the duty to indemnify, and the Plaintiff's NIED claim implicates the Petitioner's duty to defend the Respondent against all the Plaintiff's claims. Id.

As more fully discussed below, after reviewing the parties' filings and controlling authorities, the Court finds that the Petitioner does not have a duty to defend or indemnify the Respondent in the underlying lawsuit.

**A. Applicable Law**

To determine whether an insurer has a duty to defend, the Court must "compare the pertinent provisions of [the Policy] with the allegations in the underlying complaint." Edmond, 785 F. Supp. 2d at 564; see also Corder v. William W. Smith Excavating Co., 210 W. Va. 110, 113, 556 S.E.2d 77, 80 (2001) ("[I]n determining whether an insurer has a duty to defend, the determination is made based upon the allegations of the complaint."). In West Virginia, courts "accord the language of an insurance policy its common and customary meaning." Boggs v. Camden-Clark Mem'l Hosp. Corp., 225 W. Va. 300, 304–05, 693 S.E.2d 53, 57–58 (2010). "Where the provisions in an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Glen Falls Ins.

Co. v. Smith, 217 W.Va. 213, 617 S.E.2d 760, 767–68 (2005) (quoting syl. pt. 3, Soliva v. Shand, Morahan & Co., Inc., 176 W.Va. 430, 345 S.E.2d 33 (1986) (internal citation omitted)).  Furthermore, "any ambiguities in the language of insurance policies must be construed liberally in favor of the insured." Aetna Cas. & Sur. Co. v. Pitrolo, 176 W. Va. 190, 194, 342 S.E.2d 156, 160 (1986) (citing syl. pt. 1, Hensley v. Erie Ins. Co., 168 W.Va. 172, 283 S.E.2d 227 (1981)).  Where the policy language is ambiguous, the Court must consider "whether the allegations in the complaint . . . are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." Syl. pt. 3, in part, Bruceton Bank v. U.S. Fid. & Guar. Ins., 199 W. Va. 548, 548, 486 S.E.2d 19, 19 (1997).

Generally, an insurer's duty to defend is broader than its duty to indemnify.  See Horace Mann Ins. Co. v. Leeber, 180 W. Va. 375, 378, 376 S.E.2d 581, 584 (1988).  In Leeber, the West Virginia Supreme Court held that "if part of the claims against an insured within the coverage of a liability insurance policy and part do not, the insurer must defend all of the claims, although it might eventually be required to pay only some of the claims." Id. (adopting a principle stated in Donnelly v. Transportation Insurance Co., 589 F.2d 761, 765 (4th Cir. 1978)).  Under the doctrine of reasonable susceptibility, the insurer must defend its insured if a claim against the insured "could, without amendment, impose liability for risks the policy covers." Bowyers v. Hi-Lad, Inc., 216 W. Va. 634, 651, 609 S.E.2d 895, 912 (2004).  Regardless of whether the language is ambiguous or unambiguous, "[a]n insurance company seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of that

exclusion." Syl. pt. 3, Farmers & Mechanics Mut. Ins. Co. of W. Va. v. Cook, 210 W. Va. 394, 396, 557 S.E.2d 801, 803 (2001).

### B. Analysis

As an initial matter, the Court agrees with the Petitioner that the plain meaning of the Policy exempts coverage for any punitive damages claimed by the Plaintiff. See ECF No. 14-2 at 24. The language in the Policy's punitive damages exclusion is unambiguous. Therefore, the Petitioner does not have a duty to indemnify the Respondent for punitive damages that arise from the allegations in the underlying complaint.

Below, the Court considers the Petitioner's other arguments, as well as the Respondent's argument, in turn.

#### 1. "Occurrence"

The Petitioner argues that the Plaintiff's sexual assault claims are not "occurrences" as defined by the Policy, and thus, the claims are not covered under its bodily injury liability provision. ECF No. 15 at 5. In State Bancorp, Inc. v. United States Fidelity & Guaranty Insurance Co., 199 W. Va. 99, 106, 483 S.E.2d 228, 235 (1997), the West Virginia Supreme Court found that where a policy defined an "occurrence" as an "accident," the plain meaning of "accident" precluded "actions which are *intended* by the insured." See W. Va. Fire & Cas. Co. v. Stanley, 216 W. Va. 40, 49, 602 S.E.2d 483, 492 (2004) (finding that sexual assault claims were not covered under the insurance policy's definition of "accident" because "[t]he common and everyday meaning of an 'accident' is a chance event or event arising from unknown causes. . . . Such a deliberate act [sexual assault] is not covered by the subject policy because it does not constitute an 'accident.'"). Similarly, in Smith v. Animal Urgent Care, Inc., 208 W. Va. 664, 542 S.E.2d 827 (2000),

the court found that sexual harassment claims were not covered by the insurance policy, where an "occurrence" was defined as an "accident."

Here, the Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to the same general harmful conditions." ECF No. 14-2 at 10. The Court agrees with the Petitioner that "by its very definition, sexual assault is an intentional act." ECF No. 15 at 7. Accordingly, under West Virginia case law cited above, the Court finds that the alleged sexual assaults are not "occurrences" under the Policy and are therefore not covered under the Policy's bodily injury provision.

### 2. Intentional Acts Exclusion

"Under an intentional acts exclusion, a policyholder may be denied coverage only if the policyholder (1) committed an intentional act *and* (2) expected or intended the specific resulting damage." Syl. pt. 7, Cook, 210 W. Va. at 394, 557 S.E.2d at 801 (2001). The Court will infer intent as a matter of law in a sexual misconduct liability insurance case, "due to the nature of the ac[,] . . . which is so inherently injurious, or 'substantially certain' to result in some injury, that the act is considered a criminal offense for which public policy precludes a claim of unintended consequences." Leeber, 180 W. Va. at 379, 376 S.E.2d at 585. Thus, where the insurance policy contains an intentional acts exclusion, the insurer has no duty to defend an insured in an action for or to indemnify damages allegedly caused by the sexual misconduct of the insured. Syl. pt. 1, id.; cf. Tackett v. Am. Motorists Ins. Co., 213 W. Va. 524, 533, 584 S.E.2d 158, 167 (2003) (finding that the insurance policy covered sexual harassment claims but expressly noting that the policy did not have an intentional acts exclusion applicable to the personal injury liability coverage).

Under Leeber, the Court infers the Respondent's intention to cause the damages arising from the alleged sexual assaults. The Court notes that the Respondent acknowledges that the intentional acts exclusion applies and would exempt bodily injury and personal injury liability coverage. ECF No. 16 at 4. Thus, the Court finds that the Policy's intentional exclusion act precludes both bodily injury and personal injury liability coverage for the Respondent's alleged sexual assaults.

### 3. "Personal Injury"

The Court briefly considers the Petitioner's argument that the Plaintiff's claims are not covered by the Policy's definition of "personal injury." ECF No. 15 at 11–12. The Policy states that the Petitioner will cover personal injury "arising out of . . . false arrest, wrongful detention or imprisonment . . . [and] invasion of privacy." ECF No. 14-2 at 10. Where claims of "false imprisonment and invasion of privacy . . . are predicated on instances of sexual misconduct or harassment," the intentional acts exclusion applies and extinguishes the insurer's duty to defend. Edmond, 785 F. Supp. 2d at 569.

Here, the facts alleged in the complaint—that the Respondent cornered the Plaintiff and prevented her from leaving before assaulting her—make it reasonably susceptible that the Plaintiff's claims may be covered under the Policy's personal injury liability coverage for wrongful detention or invasion of privacy. However, the Plaintiff's possible claims for wrongful detention and invasion of privacy from the underlying facts are based on the Respondent's alleged sexual assaults. Thus, the Court finds that the Plaintiff's possible claims are excluded under the intentional acts exclusion.

### 4. Coverage for Negligent Conduct

The Respondent argues that because the underlying complaint seeks damages for the Respondent's negligent infliction of emotional distress, the Petitioner has a duty to defend him in the underlying lawsuit. In Smith, the West Virginia Supreme Court held that "negligence-type allegations in a complaint that is at essence a sexual harassment claim will not prevent the operation of an 'intentional acts' exclusion." Syl. pt. 4, in part, 208 W. Va. 664, 665, 542 S.E.2d 827, 828 (2000). While Smith involved a sexual harassment claim rather than a sexual assault claim, the West Virginia Supreme Court has upheld that alleging negligent conduct in a complaint that is essentially a sexual misconduct claim does not bar the application of the intentional acts exclusion. For example, in Leeber, the parents of a junior high school student alleged that the defendant, their son's teacher, had made sexual advances and took sexual liberties with their son. 180 W. Va. at 377, 376 S.E.2d at 583. They filed a complaint and sought compensatory and emotional distress damages based upon the defendant's alleged "intentional, willful, wanton and negligent acts . . . in having sexual contacts" with the son. Id. The court found that the parents' allegations of negligence were "a transparent attempt to trigger insurance coverage by characterizing allegations of intentional tortious conduct under the guise of 'negligent' activity" because the complaint showed that the parents were seeking recovery for the defendant's alleged intentional acts. Id. at 381, 587 (internal quotations and alterations omitted) (quoting Linebaugh v. Berdish, 144 Mich. App. 750, 763, 376 N.W.2d 400, 406 (1985)). Thus, the court held that the insurer did not have a duty to defend the teacher. Id.

Similar to the negligence claim in <u>Leeber</u>, here, the Court finds that the Plaintiff's NIED claim does not alter the fact that the underlying complaint is, at essence, a claim for sexual assault. Accordingly, the intentional acts exclusion applies, and the Petitioner does not owe a duty to defend or indemnify the Respondent against the Plaintiff's claims for damages.

## V. Conclusion

For the reasons stated above, the Petitioner's Motion for Summary Judgment [ECF No. 14] is **GRANTED**. Pursuant to 28 U.S.C. § 2201, the Court **DECLARES** that the Petitioner has no duty to defend or indemnify Respondent Dolly with respect to the injuries alleged by Respondent B.D.K. in the case of <u>B.D.K. v. Dolly et al.</u>, No. 19-C-19 (W. Va. 21st Cir.).

The Clerk of Court is **DIRECTED** to enter a separate judgment in favor of the Petitioner pursuant to Rule 58 of the Federal Rules of Civil Procedure. The Clerk is further **DIRECTED** that this case shall be **DISMISSED WITH PREJUDICE** and **STRICKEN** from the Court's active docket.

The Clerk is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** December 14, 2020

*[signature]*
GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE